# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

In the Matter of the Detention of

P.K.,

                   Appellant.

)
)
)
)
)
)
)
)
)

No. 71290-0-I

ORDER DENYING MOTION
FOR RECONSIDERATION,
WITHDRAWING OPINION, AND
SUBSTITUTING OPINION

The appellant, P.K., has filed a motion for reconsideration. The respondent, State of Washington, has filed an answer, and P.K. has filed a reply. The court has taken the matter under consideration and has determined that the motion for reconsideration should be denied.

Now, therefore, it is hereby

ORDERED that the motion for reconsideration is denied; and, it is further

ORDERED that the opinion in the above-referenced case filed on May 4, 2015, is withdrawn and a substitute opinion be filed in its place.

Done this 13th day of July, 2015.

FOR THE COURT:

Trickey, J.

Becker, J.

Jan, J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 71290-0-I |
| | ) | |
| P.K., | ) | DIVISION ONE |
| | ) | |
| Appellant. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | FILED: July 13, 2015 |

TRICKEY, J. — P.K. appeals the trial court's order revoking her release from inpatient mental health treatment to a less restrictive alternative. She contends she is entitled to reversal of the order because the trial court failed to hold the revocation hearing within the time frame required by statute. P.K. also challenges the trial court's consideration of evidence contained in her medical records and the conclusion that she had substantially decompensated. We affirm.

## FACTS

On August 15, 2013, the trial court entered an order involuntarily committing P.K. for a period of 14 days. On September 3, 2013, P.K. entered into an agreed order for 90 days of a less restrictive alternative. The order required P.K. to live at Evans House, a supportive housing facility. P.K was also required to attend all appointments with the DESC PACT[1] team and take medications as prescribed.

The State subsequently filed a petition to revoke the less restrictive alternative and return P.K. to a hospital setting. The record shows that P.K. was detained at 5:50 a.m. on November 11, 2013.

---

[1] The Downtown Emergency Service Center's Program for Assertive Community Treatment provides intensive, community-based mental health services.

A revocation hearing was held on November 18, 2013. The State offered the testimony of two fact witnesses, Melina Breland and Robyn Hughes, and one expert witness, Gerri Pergola.

Breland, P.K.'s PACT team case manager, testified that P.K. was required to meet with the PACT team every morning for medication monitoring, but had missed at least five appointments since her release from inpatient treatment in September. Breland testified that in early November P.K. left Evans House and was gone for four days. Breland eventually located P.K. at P.K.'s mother's house. Breland also testified that P.K. had decompensated from her baseline level of functioning. P.K.'s hygiene had noticeably deteriorated, she refused to answer any of Breland's questions, and she asked Breland to call her by a different name.

Hughes, a residential counselor at Evans House, testified that P.K.'s hygiene since September was consistently poor and P.K. was frequently covered in her own feces. Hughes testified that in November she attempted to enforce a house rule with P.K. P.K. screamed at Hughes and Hughes "took a couple steps back because [Hughes] just didn't feel safe."[2] Hughes testified the interaction "felt more threatening to [Hughes]" than previous contacts with P.K.

Pergola, a licensed clinical social worker at Fairfax Hospital, testified that she recommended the less restrictive alternative be revoked and P.K. remain hospitalized. Pergola based her opinion on her review of P.K.'s medical records following her

---

[2] Report of Proceedings (RP) at 34.

admission to Fairfax Hospital on November 11, 2013, a consultation with P.K.'s treatment team, and her own personal assessment of P.K.

The State offered P.K.'s medical records as evidence under the business records exception to the hearsay rule. The trial court admitted the records, stating:

> All right. The court will accept the Fairfax medical records as business records and treatments therein, statements made for purposes of medical diagnosis and treatment. The court recognizes, however, that under the statute there are limitations if there are opinions as to [P.K.'s] mental state that are entered into the record by someone . . . other than this witness. The court will accept them solely for purposes of supporting Ms. Pergola's expert opinions.[3]

The trial court permitted Pergola to testify regarding the content of the records:

> So the physical observations I will allow as substantive evidence. The notes as to mental status I'll accept solely for your opinion.[4]

Pergola testified that, according to the records, P.K. was "uncooperative" with questions, was "disorganized," and appeared to be "responding to internal stimuli."[5] The records also showed P.K. had been decompensating and had a history of aggressive behavior.

Pergola also testified that she met with P.K. the morning of the hearing to determine her level of functioning. P.K.'s responses to Pergola's questions were nonsensical and P.K. was unable to articulate any plan for her continued safety and treatment outside of the hospital.

---

[3] RP at 49-50.
[4] RP at 56.
[5] RP at 51-52, 57.

P.K. constantly interrupted the proceedings with incoherent and tangential statements. When P.K. testified, she was unable to state her own name for the record. When asked if she wanted to return to Evans House, she agreed, but the remainder of her testimony was nonresponsive.

The trial court revoked P.K.'s less restrictive alternative, finding that P.K. had violated the terms of the less restrictive alternative order by missing medication meetings, failing to physically reside at Evans House, and threatening Evans House staff. The trial court also found that P.K. had suffered a substantial decompensation. The trial court remanded P.K. to inpatient treatment for the remainder of the 90-day period. P.K. appeals.

## ANALYSIS

A designated mental health professional (DMHP) may petition the trial court to revoke an order for a less restrictive alternative on one of the following grounds: (1) the individual is failing to adhere to the terms and conditions of the less restrictive alternative; (2) the individual's condition has undergone "[s]ubstantial deterioration;" (3) there is evidence of "substantial decompensation with a reasonable probability that the decompensation can be reversed by further inpatient treatment;" or (4) "[t]he person poses a likelihood of serious harm." RCW 71.05.340(3)(a)(i)-(iv). An individual detained pursuant to such a petition "shall be held until such time, not exceeding five days," as a hearing on the revocation can be scheduled. RCW 71.05.340(3)(c). At the hearing on the petition, the trial court determines whether any of the grounds in RCW 71.05.340(3)(a) have been met, and if so, "whether the terms of conditional release should be modified or the person should be returned to the facility." RCW 71.05.340(3)(d).

4

Timeliness of the Hearing

P.K. argues that the trial court violated RCW 71.05.340(3)(c) because the revocation hearing was not held within five days of her detention by the DMHP. In support of her argument, P.K. cites to RCW 71.05.180, which governs the time by which a probable cause hearing must be held. RCW 71.05.180 provides:

> If the evaluation and treatment facility admits the person, it may detain him or her for evaluation and treatment for a period not to exceed seventy-two hours from the time of acceptance as set forth in RCW 71.05.170. The computation of such seventy-two hour period shall exclude Saturdays, Sundays and holidays.[6]

P.K. compares RCW 71.05.180 with RCW 71.05.340(3)(c), which provides:

> A person detained under this subsection (3) shall be held until such time, not exceeding five days, as a hearing can be scheduled to determine whether or not the person should be returned to the hospital or facility from which he or she had been conditionally released.

P.K. argues that because RCW 71.05.340(3)(c) is silent as to whether the five-day time period excludes Saturdays, Sundays, and holidays, we must presume that it does not.

However, this court recently rejected a similar argument in In re Detention of Clark, ___ Wn. App. ___, 348 P.3d 1231 (2015), involving the timeliness of a continuance of a 14-day commitment hearing. In Clark, we examined the legislative history of chapter 71.05 RCW and determined that, where the statute did not specify whether weekends and holidays should be included, the Superior Court Civil Rules governing the computation of time apply.

> Thus, the crucial question is how to count the 48 and 24 hour periods mandated by the statute—specifically, whether to exclude weekends and holidays. Under RCW 71.05.180, the initial 72 hour detention excludes Saturdays, Sundays, and holidays. RCW 71.05.240(1) does not state the

---

[6] Emphasis added.

same exclusion for continuances. Clark asks us to interpret this omission as evidence that the legislature intended for weekends and holidays to be categorically included when granting continuances. However, based on the history of this statute, we decline to do so.[3]

---

[3] It is apparent that the difference between the two provisions was a legislative artifact. Originally, RCW 71.05.180 expressly included weekends and holidays when calculating the initial 72 hour period. LAWS OF 1973, 1st ex. sess., ch. 142, § 23. This indicated that RCW 71.05.180 was an exception to RCW 1.12.040, the general time computation statute which provides for exclusion of nonjudicial days. See LAWS OF 1887, ch. 20, § 1. RCW 71.05.240 did not specify whether weekends and holidays should be included when calculating the length of continuances. See LAWS OF 1973, 1st ex. sess., ch. 142, § 29. We interpret this to mean that RCW 71.05.240 was—and is—subject to the general time computation statute. See Amalgamated Transit Union Legislative Council v. State, 145 Wn.2d 544, 552, 40 P.3d 656 (2002) ("The legislature is presumed to be aware of its own enactments."). RCW 71.05.180 was later amended to exclude weekends and holidays, signaling that the legislature reversed its position as to the 72 hour determinations. LAWS OF 1979, 1st ex. sess., ch. 215, sec. 11.

---

Clark, 348 P.3d at 1235.

CR 6(a), which controls the computation of time for civil proceedings, provides that "[w]hen the period of time prescribed or allowed is less than 7 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation." The record shows that P.K. was detained at 5:50 a.m. on Monday, November 11, 2013. A revocation hearing was held on Monday, November 18, 2013. The intervening period contained one holiday (Veterans Day), a Saturday, and a Sunday. Pursuant to CR 6(a), these days are excluded from the computation of time. Thus, P.K.'s revocation hearing was timely because it was held four days after her detention by the DMHP.[7]

---

[7] P.K. contends that CR 6(a) does not apply because proceedings under chapter 71.05 RCW are "special proceedings." CR 81 provides that the Superior Court Civil Rules govern all civil

Business Records

P.K. argues the trial court erred when it allowed Pergola to testify to the content of medical records containing information about P.K.'s mental state. We review a trial court's decision to admit or exclude evidence for abuse of discretion. State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). Here, the trial court did not abuse its discretion. The record is clear the trial court properly considered this testimony only for the basis of Pergola's opinion, not as substantive evidence.

P.K. relies on RCW 71.05.360(9), which provides that "[t]he record maker shall not be required to testify in order to introduce medical or psychological records of the detained person so long as the requirements of RCW 5.45.020 are met except that portions of the record which contain opinions as to the detained person's mental state must be deleted from such records unless the person making such conclusions is available for cross-examination." But to the extent P.K. argues the trial court erred in admitting the medical records in violation of RCW 71.05.360(9), the record is insufficient to permit review because P.K. failed to designate the exhibit on appeal.

Moreover, RCW 71.05.360(9) does not prohibit an expert witness from testifying as to the basis of their opinion. ER 703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

---

proceedings "[e]xcept where inconsistent with rules or statutes applicable to special proceedings." We need not address P.K.'s claim that proceedings under chapter 71.05 RCW are "special proceedings" because our decision in Clark makes it clear CR 6(a) is not inconsistent with RCW 71.05.340(3)(c).

Pergola testified that she relied on the medical records in forming her opinion that P.K.'s less restrictive alternative should be revoked. The trial court clearly stated it would not consider any statement of opinion about P.K.'s mental status as substantive evidence. Furthermore, because this was a bench trial, we presume that the trial court based its decision solely on admissible evidence. Crosetto v. Crosetto, 65 Wn.2d 366, 368, 397 P.2d 418 (1964). P.K. fails to establish any abuse of the trial court's discretion.[8]

Sufficiency of the Evidence

P.K. contends the evidence was insufficient to show that she had substantially decompensated. "Decompensation" is "the progressive deterioration of routine functioning supported by evidence of repeated or escalating loss of cognitive or volitional control of actions." In re Detention of LaBelle, 107 Wn.2d 196, 206, 728 P.2d 138 (1986). Where, as here, a trial court has weighed the evidence, our review is limited to determining whether substantial evidence supports the findings and, if so, whether the findings support the conclusions of law. In re Detention of A.S., 91 Wn. App. 146, 162, 955 P.2d 836 (1998).

The trial court found that when Breland located P.K. at her mother's house, P.K. exhibited "delusional behavior beyond her usual level of functioning."[9] The trial court also found that P.K. exhibited "a consistent pattern of being unable to control her bowels" and "symptoms of being unable to focus or answer questions."[10] Furthermore, the trial court

---

[8] In re Welfare of J.M., 130 Wn. App. 912, 924-25, 125 P.3d 245 (2005), which P.K. cites, is distinguishable. In J.M., the trial court admitted medical records containing psychiatric diagnoses as business records and considered them as substantive evidence.

[9] Clerk's Papers (CP) at 88.

[10] CP at 88.

found the testimony of Breland, Hughes, and Pergola to be credible. Because P.K. does not challenge any of the trial court's findings, they are verities on appeal. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992). The findings were sufficient to support the trial court's conclusion that P.K. had suffered a substantial decompensation in her functioning.

Affirmed.

Trickey, J

WE CONCUR:

Jay, J.

Becker, J.