**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of: | No. 55559-0-II |
| L.S. | |
| Petitioner. | PUBLISHED OPINION |

LEE, J. — L.S. appeals the superior court's 90-day commitment order for involuntary treatment under the "Involuntary Treatment Act" (ITA), ch. 71.05 RCW. L.S. argues that the superior court abused its discretion and violated L.S.'s procedural due process rights by admitting hearsay evidence as substantive evidence. L.S. also claims that the evidence was insufficient to support the superior court's findings of fact and conclusions of law.

We hold that the superior court did not admit hearsay as substantive evidence nor did the court violate L.S.'s procedural due process rights. We do not address L.S.'s insufficiency of the evidence claim because she fails to provide any argument on that claim. Accordingly, we affirm L.S.'s 90-day commitment order for involuntary treatment.

No. 55559-0-II

FACTS

The superior court commissioner held a hearing on a petition[1] to commit L.S. for involuntary treatment for 90 days.[2] At the hearing, the State argued that L.S. was gravely disabled. At the time of the hearing, L.S. was detained at Western State Hospital (WSH).

Dr. Christine Collins, a forensic evaluator, was the sole witness at the hearing on the petition to commit. Dr. Collins had attempted to conduct an interview with L.S. for evaluation, but L.S. declined to participate. Instead, Dr. Collins conducted her evaluation by reviewing L.S.'s records and consulting with members of L.S.'s treatment team.

Dr. Collins testified that, in her opinion, L.S. met criteria for unspecified schizophrenia spectrum and other psychotic disorder and had a history of substance use disorder. Dr. Collins began describing the symptoms that L.S. was currently exhibiting that supported her diagnoses, stating that L.S. "has been observed, according to (inaudible)." 2 Verbatim Report of Proceedings (VRP) (Feb. 22, 2021) at 15. L.S.'s counsel objected based on hearsay. The court commissioner overruled the objection, stating it was premature.

Dr. Collins started to again describe the symptoms L.S. was exhibiting that supported her diagnoses of unspecified schizophrenia spectrum and other psychotic disorder, stating, "According

---

[1] Dr. Christine Collins and Dr. Rogelio Zaragoza filed the petition to commit L.S. The petition incorporated by reference a declaration signed by both Dr. Collins and Dr. Zaragoza. The declaration included Dr. Zaragoza's notes from L.S.'s admissions assessment, which stated that L.S. was disorganized, hyperkinetic, distractible, responding to internal stimuli, and making inappropriate responses. Dr. Zaragoza's notes also stated that L.S. had no insight into her mental illness and that L.S.'s judgment was impaired.

[2] The petition sought 180 days of involuntary treatment, but the State clarified at the hearing that it was only seeking a 90-day commitment.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55559-0-II

to the records, [L.S.] has been—." 2 VRP (Feb. 22, 2021) at 18. L.S.'s counsel again objected based on hearsay, and the State responded that it was offering the evidence under ER 703.[3] The court commissioner allowed the testimony, ruling that "[w]ith the ER 703 limitation, Dr. Collins is an expert, can rely on hearsay in formulating her own personal, professional opinion." 2 VRP (Feb. 22, 2021) at 18.

Dr. Collins then testified that, according to L.S.'s records, L.S. had been observed yelling at internal stimuli and displayed disorganized thought processes, rapid and pressured speech, anxiousness, and guardedness. Dr. Collins also testified that, earlier in her admission at WSH, L.S. displayed paranoia and some delusional beliefs and had difficulty completing her activities of daily living, including hygiene and grooming, though these symptoms had recently improved.

The State asked Dr. Collins what symptoms L.S. was currently exhibiting that support Dr. Collins' diagnosis of a history with stimulant use disorder. Dr. Collins answered, "That is purely from the records." 2 VRP (Feb. 22, 2021) at 19. L.S.'s counsel made another hearsay objection, and the State again stated it was offering the testimony under ER 703. The court commissioner accepted Dr. Collins' testimony with an ER 703 limitation, acknowledging the testimony as hearsay but allowing Dr. Collins to rely on it in formulating her professional opinion.

---

[3] ER 703 provides that

> [t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55559-0-II

Dr. Collins testified that, according to the records, L.S. "displayed impaired insight into her condition as well as her legal situation." 2 VRP (Feb. 22, 2021) at 19. Dr. Collins stated that L.S.'s chart notes said she displayed confusion regarding her diagnosis, symptoms, and medication. Dr. Collins also stated that, when staff asked L.S. to talk about her medications, L.S. described the experience of hypersalivation. Additionally, Dr. Collins stated that L.S. said she would take half of her medication if she left WSH. L.S.'s counsel again objected to Dr. Collins' references to L.S.'s chart notes as hearsay, and the court commissioner again accepted the testimony with an ER 703 limitation.

Dr. Collins also testified that it was difficult to assess how reality-based L.S.'s thoughts were because L.S. displayed disorganized speech with staff and had delusional beliefs about her mother-in-law. Also, L.S. displayed impaired judgment because she expressed confusion and frustration about using a previous attorney for her civil commitment; was unable to identify her medications or how to obtain them in the community; and stated that she did not know if she would talk to a doctor about any negative side effects, but she would instead talk to God about it.

Dr. Collins further testified that, in her opinion, L.S. would not consistently be able to ensure that her basic health and safety needs were met if she was released on the day of the hearing. Dr. Collins explained that L.S. would find it difficult to find places to get medications and to be able to access food and services, and that L.S. might not know how to obtain health insurance. Dr. Collins also testified that, in her opinion, L.S. would be at serious risk of physical harm if she was released on the day of the hearing.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55559-0-II

Dr. Collins testified that, based on L.S.'s records, L.S. did not recognize the need for medication but did participate in some aspects of treatment, like nursing groups and social activities. In Dr. Collins' opinion, L.S. was not capable of making rational decisions regarding her treatment. Dr. Collins stated that this opinion was based on L.S.'s records showing that L.S. was confused and frustrated whenever she was trying to make her needs known or attempting to understand her current legal matter. Dr. Collins' opinion was also based on the chart notes that showed L.S. would only take half of her medication and was unaware of how to obtain her medication.

Dr. Collins stated that, in her professional opinion, L.S. was gravely disabled as a result of her behavioral health disorder. Dr. Collins testified that L.S. needed to live in a supervised living facility that could offer medications as well as treatment options, and that L.S.'s discharge plan was to have L.S. live with her daughter or in a hotel. Additionally, Dr. Collins testified that, while a less restrictive alternative placement could be beneficial if they found one with supervision, medications, and treatment, L.S. had not recently expressed any desire to go to a less restrictive alternative.

During cross-examination, Dr. Collins testified that her opinion at the hearing was based largely on a review of L.S.'s chart notes and discussions with L.S.'s treatment team. Dr. Collins stated that her interactions with L.S. were limited to casual observation and one attempt to meet with her, when L.S. seemed confused and did not want to talk to Dr. Collins.

In its oral ruling, the court commissioner concluded that L.S. was gravely disabled. The commissioner based this conclusion on Dr. Collins' diagnoses and professional opinion and

5

No. 55559-0-II

acknowledged that Dr. Collins relied on chart notes, medical records, and her own brief observation of L.S.

The court commissioner made written findings and conclusions in its order committing L.S. for involuntary treatment. The order incorporated by reference the commissioner's oral findings of fact and conclusions of law. The order also included the following findings:

> Respondent suffers from a behavioral health disorder. The diagnosis is: Unspecified Schizophrenia Spectrum and Other Psychotic Disorder; and History of Substance Use Disorder (Stimulant).
>
> . . . .
>
> ☒·**Is/Continues To Be Gravely Disabled and Respondent:**
>
>> ☒        as a result of a behavioral health disorder is in danger of serious physical harm resulting from the failure to provide for his/her essential needs of health or safety.

Clerk's Papers (CP) at 21-22.

The order listed "Facts in Support" underneath this finding. CP at 22 (boldface omitted). In this section, the order provided a summary of the hearing and testimony at the hearing. This summary included Dr. Collins' testimony based on her review of L.S.'s records and consultation with members of L.S.'s treatment team. The summary also included the fact that Dr. Collins was unable to interview L.S. and that Dr. Collins' opinions were based on medical records.

The order included the following conclusions of law:

> 1.        **Jurisdiction**. The court has jurisdiction over the parties and subject matter of this behavioral health proceeding.
>
> 2.        **Detention Criteria.** The Respondent as a result of a behavioral health disorder:

6

No. 55559-0-II

. . . .

☒        is/continues to be gravely disabled.

CP at 23.

L.S.'s counsel moved to revise the order and argued that the State had not presented sufficient evidence to support the finding of grave disability without the use of hearsay. During the hearing on the motion to revise, the superior court noted that Dr. Collins based her opinion on L.S.'s

> ongoing signs of what appears to be hallucinations and responding to internal stimuli, her failure to engage in any discussion regarding planning for discharge, her rather delusional statements as to how she would survive if she were to be released, [and] her statement that she would only take half of her medication if released.

VRP (Mar. 19, 2021) at 13. The superior court also stated that L.S.'s statements could be considered as statements of a party opponent. The superior court denied L.S.'s motion to revise and adopted the court commissioner's findings of fact and conclusions of law.

L.S. appeals.

## ANALYSIS

When a superior court decides a motion to revise, we review de novo the superior court's decision, not the court commissioner's decision. *In re Det. of L.K.*, 14 Wn. App. 2d 542, 550, 471 P.3d 975 (2020). We review the superior court's decision "'based on the evidence and issues presented to the commissioner.'" *Id.* (quoting *In re Vulnerable Adult Pet. for Winter*, 12 Wn. App. 2d 815, 829, 460 P.3d 677, *review denied*, 196 Wn.2d 1025 (2020)). The court commissioner's

7

No. 55559-0-II

findings and orders, if not successfully revised, become the orders and findings of the superior court. *Id.*

A. HEARSAY AS SUBSTANTIVE EVIDENCE

L.S. argues that the superior court erred by admitting hearsay as substantive evidence. We disagree.

Hearings on petitions for involuntary treatment "shall in all respects accord with . . . the rules of evidence under RCW 71.05.217." RCW 71.05.310. The subject of the petition has the right to cross-examine witnesses and to be proceeded against by the rules of evidence. RCW 71.05.217(5)(d), (e), (10).

Hearsay is a statement, other than one made by the declarant while testifying, offered in evidence to prove the truth of the matter asserted. ER 801(c). Hearsay is not admissible except as provided in other evidence rules, by court rules, or by statute. ER 802.

ER 703 pertains to expert testimony and provides that

> [t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

An "expert may testify in terms of opinion or inference . . . without prior disclosure of the underlying facts or data, unless the judge requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross examination." ER 705. "Otherwise inadmissible evidence may be admissible to explain the expert's opinion or to permit the jury to determine what weight it should be given." *State v. Furman*, 122 Wn.2d 440, 452-53, 858 P.2d

8

No. 55559-0-II

1092 (1993). An expert's opinion is considered evidence. *See In re Det. of Thorell*, 149 Wn.2d 724, 762-63, 72 P.3d 708 (2003) (expert opinion testimony provided sufficient evidence to commit individual as a sexually violent predator), *cert. denied*, 541 U.S. 990 (2004).

"The determination of whether expert testimony is admissible is within the discretion of the trial court." *In re Pers. Restraint of Young*, 122 Wn.2d 1, 57, 857 P.2d 989 (1993); *Johnston-Forbes v. Matsunaga*, 181 Wn.2d 346, 352, 333 P.3d 388 (2014). We will not disturb the trial court's decision on admission of expert testimony unless there has been an abuse of discretion. *Young*, 122 Wn.2d at 57. In a bench trial, we presume that the trial court based its decision solely on admissible evidence. *In re Det. of P.K.*, 189 Wn. App. 317, 325, 358 P.3d 411 (2015), *review denied*, 186 Wn.2d 1009 (2016).

Here, Dr. Collins testified about L.S.'s treatment team's observations and interactions with L.S. and made clear that she relied on that information in forming her opinions. And the court commissioner made clear several times during the hearing that the admission of testimony relating to L.S.'s treatment team's observations and interactions with L.S. was limited by ER 703 as the bases for Dr. Collins' expert opinions. And the commissioner's oral ruling, which was incorporated into the court's written findings of fact and conclusions of law, acknowledged that Dr. Collins' opinions relied on her review of L.S.'s medical records, discussions with L.S.'s treatment team, and Dr. Collins' own brief observation of L.S.

Also, the superior court stated that the testimony about L.S.'s treatment team's observations and interactions with L.S. was the information relied upon by Dr. Collins in forming her opinions. And the superior court adopted the court commissioner's order, which included the

No. 55559-0-II

commissioner's incorporated oral findings and conclusions. Those oral findings and conclusions stated that the finding of grave disability was based on Dr. Collins' diagnoses and professional opinions, which Dr. Collins formed by relying on chart notes, medical records, and her own brief observation of L.S.

The record shows that the superior court did not admit hearsay evidence as substantive evidence. Instead, the hearsay evidence was admitted under ER 703 as the underlying facts supporting Dr. Collins' expert opinion, and the superior court properly relied upon Dr. Collins' expert opinion as evidence of L.S.'s grave disability. *See Thorell*, 149 Wn.2d at 762-63; *Furman*, 122 Wn.2d at 452-53. Thus, the superior court did not abuse its discretion.

B. PROCEDURAL DUE PROCESS AND RIGHT TO CONFRONTATION

L.S. argues that the superior court violated her procedural due process rights by allowing testimony about non-testifying individuals' observations and interactions with L.S. without providing her the opportunity to confront those individuals. We disagree.

Because involuntary civil commitment is a significant deprivation of individual liberty, due process is required. *In re Det. of Stout*, 159 Wn.2d 357, 369, 150 P.3d 86 (2007). Hearings on petitions for involuntary treatment "shall in all respects accord with the constitutional guarantees of due process of law and the rules of evidence under RCW 71.05.217." RCW 71.05.310.

10

No. 55559-0-II

Our Supreme Court has applied the *Mathews v. Eldridge*[4] balancing test to the question of whether a person has a procedural due process right to confrontation.[5] *Stout*, 159 Wn.2d at 370.

> In determining what procedural due process requires in a given context, we employ the *Mathews* test, which balances: (1) the private interest affected, (2) the risk of erroneous deprivation of that interest through existing procedures and the probable value, if any, of additional procedural safeguards, and (3) the governmental interest, including costs and administrative burdens of additional procedures.

*Id*. At the core of procedural due process is a right to be meaningfully heard, but the minimum requirements depend on what is fair in a particular context. *Id*. Therefore, procedural due process is flexible and is evaluated on a case-by-case basis. *In re Det. of L.H.*, 18 Wn. App. 2d 516, 522,

---

[4] 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

[5] This court held in *In re Det. of J.M.*, 20 Wn. App. 2d 734, 744-45, 501 P.3d 187, *review denied*, 199 Wn.2d 1014 (2022), that "the *Mathews* balancing test is not applicable in an involuntary commitment proceeding because such a proceeding is not criminal in nature and due process does not require application of the Fifth Amendment in an involuntary commitment proceeding." The *J.M.* court based its decision on the United States Supreme Court's decision in *Allen v. Illinois*, 478 U.S. 364, 374-75, 106 S. Ct. 2988, 92 L. Ed. 2d 296 (1986), which held that due process did not require application of the Fifth Amendment's privilege against self-incrimination in non-criminal proceedings. *See J.M.*, 20 Wn. App. 2d at 745. *Allen*'s holding was based on the fact that "[t]he privilege against self-incrimination enjoined by the Fifth Amendment is not designed to enhance the reliability of the factfinding determination; it stands in the Constitution for entirely independent reasons." 478 U.S. at 375.

Here, L.S. claims that the superior court violated her procedural due process right by depriving her the opportunity to confront individuals whose observations and interactions with L.S. were admitted into evidence. The right to confrontation, unlike the privilege against self-incrimination, "assures the accuracy of the fact-finding process." *State v. Lee*, 188 Wn.2d 473, 487, 396 P.3d 316 (2017). Therefore, although *J.M.* held that the *Mathews* balancing test does not apply to due process claims made under the Fifth Amendment in involuntary commitment cases, we still apply the *Mathews* balancing test to L.S.'s procedural due process claim based on an alleged confrontation violation.

11

No. 55559-0-II

492 P.3d 192, *review denied*, 198 Wn.2d 1031 (2021). The party claiming a due process violation has the burden of proof. *Id.* at 523.

### 1. Private Interest Affected

Here, on the first *Mathews* factor, the State "concedes that L.S. has a significant interest in her physical liberty and that civil commitment is a significant deprivation of that liberty." Br. of Resp't at 23. We accept the State's concession.

### 2. Risk Of Erroneous Deprivation Of Private Interest Through Existing Procedures And Probable Value Of Additional Procedural Safeguards

The second *Mathews* factor weighs in favor of the State. The court in *L.H.* recently addressed this same issue and held that respondents in involuntary treatment hearings have significant procedural protections, including the right to an attorney (including the right to appointed counsel), the right to present evidence on their own behalf, the right to cross-examine witnesses who testify against them,[6] the right to view and copy petitions and reports, the right to a jury, and the right to have the rules of evidence enforced. 18 Wn. App. 2d at 524-25. To petition for 90-day involuntary treatment, petitioners must support their petitions with affidavits by mental or physical health professionals. *Id*. at 525. "On balance, the comprehensive set of procedural safeguards listed above minimize the risk of a trial court erroneously depriving an ITA respondent of their liberty interest." *Id*.

---

[6] We note that the alleged confrontation violation was the admission of hearsay testimony as substantive evidence. But, as discussed above, the superior court did not admit hearsay testimony as substantive evidence; rather, the court admitted the evidence as underlying facts relied on by an expert to form an opinion under ER 703.

No. 55559-0-II

Given the numerous safeguards already in place, the additional procedural safeguard of confronting individuals whose observations and interactions with L.S. were relied on by Dr. Collins in forming her opinions would probably add little value to L.S.'s involuntary treatment hearing. And, as in *L.H.*, L.S. does not claim that she was deprived of the right to interview her treatment providers or call them herself as witnesses. *Id.* at 526.

3.      Governmental Interest Including Costs And Administrative Burdens Of Additional Procedures

The third *Mathews* factor also weighs in favor of the State. The State argues that it has interests in treating those with mental illness when they pose a risk to themselves and others, and in reducing administrative burdens. *L.H.* held that both of these State interests are strong. *Id.* at 526-27. The government has important interests in increasing public safety and encouraging effective treatment of violent mentally ill individuals. *In re Det. of M.W.*, 185 Wn.2d 633, 660, 374 P.3d 1123 (2016). And "requiring the author of every relevant medical chart note to testify at a 90-day ITA commitment hearing would pose a significant burden on the State." *L.H.*, 18 Wn. App. 2d at 526.

Because (1) existing procedural safeguards protect L.S.'s strong liberty interest, (2) confrontation would add little probable value to L.S.'s hearing, and (3) the State has strong interests in treating those with mental illness and reducing administrative burdens, the *Mathews* balancing test weighs in favor of the State. *See Stout*, 159 Wn.2d at 370; *L.H.*, 18 Wn. App. 2d at 526-27. Accordingly, we hold that the superior court did not violate L.S.'s procedural due process rights when it allowed Dr. Collins to testify about non-testifying individuals' observations of and interactions with L.S., which was relied on to form her expert opinion.

13

No. 55559-0-II

B.    SUFFICIENCY OF THE EVIDENCE

L.S. contends that the evidence was insufficient to support the superior court's findings of fact and conclusions of law. We do not address L.S.'s claim because L.S. does not provide any argument on this claim.

RAP 10.3(g) states, "A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number." Unchallenged findings of fact are verities on appeal. *In re Det. of W.C.C.*, 193 Wn. App. 783, 793 n.5, 372 P.3d 179 (2016). Where a party presents no argument on a claimed assignment of error, that assignment of error is waived. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Here, L.S.'s assignments of error include the question: "Was the admissible evidence insufficient to support the findings of fact and conclusions of law?" Br. of Appellant at 1. L.S. does not provide any argument in her brief on her insufficiency of the evidence claim. Accordingly, L.S. has waived that assignment of error.[7]

---

[7] However, even assuming this assignment of error was not waived, L.S.'s claim fails. L.S. alleges insufficient evidence to support the findings of fact, but L.S. did not assign error to any finding of fact in the order and did not provide any argument to support her insufficiency of the evidence claim. Because L.S. did not assign error to any finding of fact in the order, the following findings are verities on appeal: (1) L.S. was advised of her right to refuse medication 24 hours prior to the hearing, and those rights were respected; (2) L.S. suffers from behavioral health disorders including unspecified schizophrenia spectrum and other psychotic disorder, and a history of substance use disorder (stimulant), and as a result of these disorders is in danger of serious physical harm resulting from the failure to provide for her essential needs of health and safety; and (3) less restrictive alternatives to involuntary detention are not in the best interests of L.S. or others. *See W.C.C.*, 193 Wn. App. at 793. The order also included two conclusions of law: one relating to jurisdiction and one stating that L.S. "as a result of a behavioral health disorder: . . . is/continues to be gravely disabled." CP at 23.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55559-0-II

CONCLUSION

We hold that the challenged evidence was admitted under ER 703 as the underlying facts relied on by the expert in forming an opinion; thus, the court did not abuse its discretion in allowing the testimony. Also, the superior court did not violate L.S.'s procedural due process rights by allowing the expert to testify about the non-testifying treatment team's observations and interactions with L.S., which the expert relied on to form an opinion. Accordingly, we affirm L.S.'s 90-day commitment order for involuntary treatment.

_____
Lee, J.

I concur:

_____
Price, J.

---

As stated above, these findings of fact are verities on appeal and they support the conclusion that L.S. is gravely disabled as a result of a behavioral health disorder. Accordingly, even assuming L.S. did not waive her sufficiency of the evidence claim, that claim fails.

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55559-0-II

WORSWICK, J. — (Dissenting) A careful examination of the facts of this case illustrates that the majority's opinion is that no factual evidence is required to support an order for 90 days of involuntarily treatment and, that a person can be committed on little more than one expert's opinion. I dissent because this is insufficient evidence to curtail L.S.'s freedom from bodily restraint, a right protected by the Fourteenth Amendment to the United States Constitution.

At L.S.'s hearing, no witnesses testified to substantial *facts* regarding L.S.'s symptoms, condition, reason for admission, or other circumstances of her detention. The only witness called to testify was Dr. Christine Collins, who had never examined L.S., but instead reviewed L.S.'s records and consulted with members of L.S.'s treatment team. Dr. Collins then rendered an opinion based on that record review and consultation. At the hearing, the trial court made it clear that it was admitting the facts from the record review and consultations under ER 703, and solely for the purpose of supporting Dr. Collins's opinion. Yet despite this limitation, the "findings" of the trial court state:

> Respondent suffers from a behavioral health/mental health/substance abuse disorders, characterized by the following symptoms: She has been observed, according to records, responding to internal stimuli by responding to unseen others, displaying a disorganized thought processes, she is anxious and guarded, she evidences paranoia and delusional beliefs. Early in her admission she had difficulty completely her ADL's, which has presently resolved. According to records, she displays impaired insight into both her mental illness, her diagnosis, what symptoms she experiences, what medications she takes and why she takes antipsychotic. On January 4th of 2021, when asked what medications do for her, she answered "I do that for myself". She said she would take half her medications if released. She responds with tangential statements and has delusional beliefs that her mother could see her at religious events in the hospital. She has impaired judgment. Respondent left the hearing after a few minutes appearing by Zoom and left after a few minutes, court voluntarily waived her presence. She has expressed confusion about why she can't have the same attorney she had for her prior criminal matter. She said she would talk to God about problems with her medications. When

16

No. 55559-0-II

asked about whether she would talk to her doctor, she answered, "I don't know". Her disorganized thought processes, limited reasoning and comprehension, she would have difficulty in the community meeting her basic health and safety needs, placing her at significant risk of serious harm if released today. She does not have prior mental health commitments. She does participate in groups, attends, but has impaired attention span and frequently walks out of groups, per records. She cannot make rational decisions regarding decisions about discharge planning. Despite multiple contacts with her social worker each week, she has significant difficulty understanding what is happening with her current situation. She is gravely disabled as a result of her mental health disorder. She needs a structured, supportive living arrangement to meet her medication and mental health care treatment needs.

CP at 22.

Other than the fact that L.S. left the hearing, none of these facts was admitted for the truth of the matter asserted; they were all admitted for the limited purpose of supporting Dr. Collins's opinion. Thus, this entire section should be interpreted to state nothing more than, "Dr. Collins reviewed records, consulted with others, and rendered an opinion that L.S. is gravely disabled as a result of her mental health disorder, and it is her opinion that L.S. needs a structured, supportive living arrangement to meet her medication and mental health care treatment needs. L.S. left the hearing after a few minutes." These are the trial court's actual findings of fact.

The only finding the trial court made regarding Dr. Collins's direct observations of L.S. were as follows:

I briefly observed difficulty communicating with her when I first met with her to evaluate her.

When I explained the purpose of the interview, Respondent seemed confused and did not want to talk to her. She didn't understand the purpose of the evaluation and interview and seemed confused. I have seen her on the unit a number of times, but was not specifically observing her at those times. My opinions are based upon the medical records.

CP at 22-23.

17

No. 55559-0-II

Notably, the State failed to admit L.S.'s medical records, which, subject to RCW 71.05.217[8] and some redaction, would have been admissible under the business records exception to the hearsay rule.

Looking at the evidence and considering the evidence for its limited purpose, as we must, we have little more than the opinion of an expert that L.S. is gravely disabled. And although the opinion of an expert is some evidence, I would hold that standing alone, it is insufficient evidence to subject a person to 90 days of involuntary treatment.

Accordingly, I respectfully dissent.

_____
Worswick, P.J.

---

[8] RCW 71.05.217(7)(c) provides:

> The record maker may not be required to testify in order to introduce medical or psychological records of the detained person so long as the requirements of RCW 5.45.020 are met except that portions of the record which contain opinions as to the detained person's mental state must be deleted from such records unless the person making such conclusions is available for cross-examination.

18