IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Detention of | No. 88147-7-I |
| F.L.A., | |
| Appellant. | UNPUBLISHED OPINION |

BOWMAN, A.C.J. — F.A. appeals the trial court's order committing him for 180 days of involuntary treatment. He argues substantial evidence does not support the court's conclusion that he continued to be gravely disabled under RCW 71.05.020(25)(b). We affirm.

FACTS

The State charged F.A. with third degree assault, felony harassment, and obstruction of a law enforcement officer. On March 19, 2024, the trial court found F.A. to be incompetent, dismissed the felony charges, and ordered an evaluation for civil commitment. F.A. was already residing at Western State Hospital, so the court ordered that he remain committed for 72 hours for evaluation.

On March 25, Western doctors petitioned the court for up to 180 days of involuntary treatment for F.A. They alleged he was gravely disabled as a result of a behavioral health disorder, was not ready for a less restrictive placement, and required continued treatment for a period not to exceed 180 days.

On August 8, F.A. stipulated that he was gravely disabled due to a mental disorder and agreed to 90 days of involuntary treatment. The court entered findings of fact and conclusions of law that F.A. continued to be gravely disabled and that a less restrictive alternative to a 180-day commitment was in his best interests. It ordered F.A. to continue intensive inpatient treatment for up to 90 days.

On October 14, Western doctors petitioned for up to 180 days of additional involuntary treatment, stating that F.A. continued to be gravely disabled, was not ready for a less restrictive placement, and required continued treatment at Western. On January 23, 2025, a superior court commissioner held a hearing on the petition.

Dr. Gwendolyn Barnhart, a licensed clinical psychologist and psychology services supervisor at Western, was the sole witness at the hearing. Dr. Barnhart testified that she tried to meet with F.A. several times but he declined, so she formed an opinion about whether F.A. had a behavioral disorder by speaking to members of his treatment team, reviewing his hospital records, and reviewing his evaluations, including his "latest biopsychosocial evaluation."

Dr. Barnhart opined that F.A. suffers from a behavioral disorder, particularly, "schizoaffective disorder, bipolar type," which she described as "schizophrenia with bipolar mixed in." She based her opinion in part on evidence that F.A. exhibited "delusional thought content." For example, he believed that he needed to travel to New York to collect $5 million, that he was poisoned in the

hospital, and that the jail was trying to pay him $45 million to silence him because he had been raped in jail.

Dr. Barnhart also noted that F.A. experienced "auditory hallucinations." She explained that hospital staff saw him "responding to internal stimuli, talking to himself, [and] laughing at unseen persons." Dr. Barnhart said that F.A. also suffered from disorganized thoughts. She explained that his plans for placement were disorganized because he said he "want[ed] to live in a[n] adult family home, but . . . he also wanted to be an organ donor."

Dr. Barnhart also testified that F.A. had a "significant" history of assaultive behavior in the hospital. And even though there had been no physical assaults in roughly three months, he was verbally aggressive, to the point of losing a privilege level at the hospital. Dr. Barnhart opined that F.A. had "very limited insight" into his illness, explaining that he could not understand why his privilege levels dropped after he was verbally aggressive. And he did not understand why he needs to take medication after he is discharged from the hospital.

In Dr. Barnhart's opinion, F.A.'s judgment was "very" impaired. She testified that she reviewed his chart the morning of the hearing and read that staff found F.A. trading his medication about 20 days before the hearing. And in her "direct conversation with . . . his psychiatrist," Dr. Barnhart learned that F.A. was not taking his medication consistently. For example, he had not taken his medication the few weeks before the hearing, and at the time of the hearing, he was taking only half of his prescribed dosage. Dr. Barnhart also told the court that in the month before the hearing, F.A. was attending treatment groups only

"intermittently." Based on all the information she gathered, Dr. Barnhart opined that if Western released F.A. "without support," he would "absolutely not" meet his "basic health and safety needs" because of his behavioral health disorder, nor would he stay on his medication.

Dr. Barnhart also said she was "really" worried for F.A.'s safety because this was his fourth admission at Western in a relatively short period of time. In her professional assessment, if the court released F.A. on the day of the hearing, he would not independently seek out and follow through with mental health care. Dr. Barnhart concluded that in her opinion, F.A. continued to be gravely disabled and that a less restrictive alternative to involuntary detention would not be in his best interests.

On cross-examination, Dr. Barnhart discussed how she was not F.A.'s treating psychologist and "observe[d]" him only twice while leaving and then going back to his room. She repeated that she had not interviewed F.A. because he declined. She also clarified that F.A. attended some groups and that he was generally "independent with his activities of daily living." And she testified that staff managed to redirect F.A. when his "emotions started to get elevated."

The commissioner orally granted Western's petition at the end of the hearing, concluding that F.A. continued to be gravely disabled under RCW 71.05.020(25)(b). The court found that without involuntary treatment, F.A. would not receive the care essential for his health and safety and that a less restrictive alternative was not in his best interests. The commissioner ordered that F.A. be involuntary committed for up to 180 days.

4

The same day, the court also issued written findings, conclusions, and an order that incorporated by reference its oral findings and conclusions. The court found that F.A.

> suffers from a behavioral health disorder. The diagnosis is: Schizoaffective Disorder - Bipolar Type; Stimulant Use Disorder, in remission, in a controlled environment, by history; Cannabis Use Disorder, in remission, in a controlled environment, by history; Nicotine Use Disorder, in remission, in a controlled environment, by history.

It found that F.A. was and continued to be gravely disabled and that "as a result of a behavioral health disorder," he manifested "severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over [his] actions," and that he "is not receiving such care as is essential for [his] health and safety." The court further found that less restrictive alternative treatment was "not in the best interests of [F.A.] or others."

The order listed "Facts in Support" of the court's findings. In that section, the commissioner summarized the January 23, 2025 hearing and the testimony of Dr. Barnhart. The court recognized that Dr. Barnhart based her opinion on her review of F.A.'s records, evaluations, and recent chart notes and on prior petitions. The order noted that Dr. Barnhart saw F.A. on the ward two times but he refused to participate in an interview with her. And the court concluded again that F.A. continued to be gravely disabled.

The next day, F.A. moved to revise the commissioner's order, arguing that the State had not presented sufficient evidence to support a conclusion of continued grave disability. A superior court judge denied the motion.

F.A. appeals.

ANALYSIS

F.A. argues insufficient evidence supports the superior court's conclusion that he continued to be gravely disabled. We disagree.

When a superior court judge decides a motion to revise a court commissioner's order, we review the superior court judge's decision, not the commissioner's decision. *In re Det. of L.K.*, 14 Wn. App. 2d 542, 550, 471 P.3d 975 (2020). We review the superior court's decision based on the evidence and issues presented to the commissioner. *Id.* The court commissioner's findings and orders, if not successfully revised, become the findings and orders of the superior court. *Id.* (citing RCW 2.24.050).

For an involuntary commitment order, we review whether substantial evidence supports the court's findings of fact and whether those findings support the court's conclusions of law. *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986). "Substantial evidence" is evidence sufficient " 'to persuade a fair-minded person of the truth of the declared premise.' " *In re Det. of A.S.*, 91 Wn. App. 146, 162, 955 P.2d 836 (1998) (quoting *Holland v. Boeing Co.*, 90 Wn.2d 384, 390-91, 583 P.2d 621 (1978)), *aff'd*, 138 Wn.2d 898, 982 P.2d 1156 (1999). Unchallenged findings of fact are verities on appeal. *In re Det. of L.S.*, 23 Wn. App. 2d 672, 686, 517 P.3d 490 (2022).

Involuntary commitment for behavioral health disorders "is a significant deprivation of liberty [that] the State cannot accomplish without due process of

6

law." *LaBelle*, 107 Wn.2d at 201. Still, the law provides for involuntary commitment of a person who is gravely disabled. RCW 71.05.280(4).

Under chapter 71.05 RCW, "gravely disabled" means

a condition in which a person, as a result of a behavioral health disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

RCW 71.05.020(25). Subsections (a) and (b) of RCW 71.05.020(25) set forth "two alternative definitions of 'gravely disabled,' either of which provides a basis for involuntary commitment." *LaBelle*, 107 Wn.2d at 202.[1]

When alleging grave disability under prong (b) of the statute, the petitioner must show "recent proof of significant loss of cognitive or volitional control." *LaBelle*, 107 Wn.2d at 208; *see* RCW 71.05.020(25). The evidence must also show that involuntary treatment is "*essential* to an individual's health or safety," and it should show "the harmful consequences likely to follow" if the court does not order treatment. *Id.* In sum, the individual must be "*unable*, because of severe deterioration of mental functioning, to make a rational decision with respect to his need for treatment." *Id.* To commit a person who is currently committed for involuntary treatment for an additional 180 days, the petitioner must show by "clear, cogent, and convincing evidence" that the person, as a

---

[1] *LaBelle* cites the definition of "gravely disabled" under former RCW 71.05.020(1) (1979). Because the definition has not changed, we cite the current statute, RCW 71.05.020(25).

7

result of a mental disorder, continues to be gravely disabled. *See* RCW 71.05.310, .020(25); *LaBelle*, 107 Wn.2d at 209.

Here, F.A. stipulated that he was gravely disabled on August 8, 2024. At issue during the January 23, 2025 hearing was whether F.A. continued to be gravely disabled. At that hearing, Dr. Barnhart testified that in her opinion, F.A. still suffered from a behavioral health disorder—"schizoaffective disorder, bipolar type."

She also opined that F.A. continued to have impaired judgment and limited insight into his illness, that he could not meet his basic health and safety needs, and that he would not stay on his medication if the court released him from Western on the day of the hearing. Nor did she believe that he would independently seek out and follow through with mental health care if he was released that day. As a result, Dr. Barnhart concluded that in her opinion, F.A. continued to be gravely disabled and that a less restrictive alternative to involuntary treatment would not be in his best interests.

Dr. Barnhart's testimony supports the court's findings that F.A. continued to suffer from a behavioral disorder, resulting in severe deterioration of routine functioning and requiring additional hospitalization to receive care essential for his health and safety. And the court could reasonably have determined that those findings support its conclusion that there is clear, cogent, and convincing evidence that F.A. continued to be gravely disabled.

Still, F.A. argues that Dr. Barnhart's expert testimony alone was insufficient to support the court's conclusion that he continued to be gravely disabled. According to F.A., Dr. Barnhart's testimony was based entirely on hearsay, so "Petitioners presented no substantive evidence to meet their burden" under the grave disability statute. But an expert opinion is substantive evidence. *See L.S.*, 23 Wn. App. 2d at 681-82 (court properly relied on expert opinion as substantive evidence of grave disability). And we do not reweigh evidence or make credibility determinations on appeal. *In re Parentage of R.V.*, 22 Wn. App. 2d 300, 314, 511 P.3d 148 (2022).

Finally, as much as F.A. suggests that an expert cannot rest their opinion on hearsay, he is incorrect. An expert may rely on facts or data not otherwise admissible in formulating an opinion. ER 703. And the otherwise inadmissible facts and data may be admissible to explain the expert's opinion or to help the fact finder determine what weight to give the opinion. *See L.S.*, 23 Wn. App. 2d at 681. In a bench trial, we presume that the trial court based its decision solely on admissible evidence. *Id.* (citing *In re Det. of P.K.*, 189 Wn. App. 317, 325, 358 P.3d 411 (2015)). So, here, we presume that the court properly relied on Dr. Barnhart's opinion and considered the hearsay evidence only to help explain how Dr. Barnhart reached her opinion and to assist it in evaluating her credibility.

Because substantial evidence supports the court's findings and those findings support its conclusion that F.A. continued to be gravely disabled under RCW 71.05.020(25)(b), we affirm the court's findings, conclusions, and order

9

No. 88147-7-I/10

committing him for up to 180 days of involuntary treatment[2] and the superior

court's order denying F.A.'s motion to revise.

_____, ACJ

WE CONCUR:

_____        _____
Feldman, J.                       Díaz, J.

---

[2] For the same reason, we conclude that substantial evidence supports the court's finding that a less restrictive alternative to involuntary detention was not in F.A.'s best interests.

10